**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

ORLANDO ALICEA-BERDECIA,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO.: 25-1289 (MEL)

**OPINION AND ORDER**

## I. PROCEDURAL AND FACTUAL BACKGROUND

On October 21, 2022, Orlando Alicea-Berdecia ("Plaintiff") applied for disability benefits under the Social Security Act, alleging he became unable to work due to disability on June 23, 2022 (the "onset date"). Tr. 41, 74, 105. Prior to the onset date, Plaintiff worked as a customer service coordinator as well as a cashier and/or store clerk at Claro, a telecommunications company. Tr. 74-76. Plaintiff has met the insured status requirements under the Social Security Act through June 30, 2028. Tr. 48. Plaintiff's disability claim was initially denied on March 8, 2023, and then again upon reconsideration on June 26, 2023. Tr. 100-105, 113-116.

Following this denial, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 17, 2023. Tr. 827, 833. A telephone hearing was held on April 26, 2024, before ALJ Luciannette Planas and Plaintiff appeared represented by counsel. Tr. 63-93. The ALJ issued her decision on June 4, 2024, wherein she found Plaintiff was not disabled from the onset date through the date she issued her decision. Tr. 41-57. Plaintiff subsequently requested review of the ALJ's decision before an Appeals Council ("AC") on June 25, 2024. Tr. 973-976. The AC reviewed and affirmed the ALJ's denial of disability benefits on April 4, 2025, rendering the ALJ's

decision the final decision of the Commissioner of Social Security (the "Commissioner") and subject to judicial review. Tr. 1-6. Pending before the Court is Plaintiff's petition for judicial review of the Commissioner's decision denying disability benefits, the Commissioner's response, and Plaintiff's reply. ECF Nos. 1, 12, 14, 17.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not

proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii) ("the listings"). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

## III. THE ALJ'S DECISION

In her decision dated June 4, 2024, the ALJ found that Plaintiff met the insured status requirements through June 30, 2028. Tr. 43. At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date through the date of her decision. *Id*. At step two of the sequential evaluation process, the ALJ found Plaintiff had the following severe impairments: "spine disorders, obstructive sleep apnea, lumbar spine stenosis, hypertension, obesity, major depressive disorder, and anxiety." Tr. 44. At step three of the sequential evaluation process, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Id*. Before addressing step four, the ALJ proceeded to assess Plaintiff's RFC and determined the following:

> [C]laimant has the residual functional capacity to perform light work, as defined in 20 C.F.R. 404.1567(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing and/or walking for six hours. The claimant can push and pull as much weight as he can lift and carry. The claimant can climb ramps and stair frequently, climb ladders and ropes, or scaffolds occasionally, stoop frequently, kneel frequently, crouch frequently, and crawl frequently. The claimant can frequently work at unprotected heights, frequently work interacting with moving mechanical parts, and frequently operate a commercial motor vehicle. The claimant retains the capacity to understand, remember and carryout simple instructions. He can never perform work requiring specific production rates such as assembly line work or work that requires hourly quotas. He can use judgment limited to perform simple work-related decisions and is limited to deal with occasional changes in a routine work setting. The claimant can occasionally interact with supervisors and coworkers; and never interact with the general public.

Tr. 46.

At step four of the sequential evaluation process, the ALJ determined that Plaintiff was unable to perform his past relevant work, which was classified as cashier II and credit clerk by the Vocational Expert ("VE") at the hearing. Tr. 54-55, 87. At step five of the sequential evaluation

process, the ALJ presented the VE with a hypothetical scenario involving an individual with Plaintiff's RFC limitation as well as his age, education, and work experience. Tr. 55-56, 88-89. The VE testified that an individual with similar circumstances and a similar RFC would be able to perform occupations such as marker, router, and checker I. *Id*. Having found that there was work in significant numbers in the national economy that Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled from the onset date through the date of her decision. Tr. 56-57.

## IV. LEGAL ANALYSIS

Plaintiff alleges the ALJ's decision contains three errors, to wit: (1) the ALJ's RFC assessment is erroneous because it is not supported by substantial evidence; (2) the ALJ erred in finding that Plaintiff's mental impairment did not meet listing 12.04; and (3) the ALJ did not use the proper legal standard for evaluating Plaintiff's subjective complaints of pain, did not fully discuss the *Avery* factors, and did not properly consider the severity and limiting effects of his subjective complaints.[1] ECF No. 12 at 10; ECF No. 17 at 1-2. The Court will discuss each of Plaintiff's arguments in turn.

### A. Plaintiff's RFC Determination

Plaintiff argues that the ALJ's RFC determination of light work[2] is incorrect because, per the medical record, Plaintiff has more limitations that those the ALJ found, thereby warranting an RFC to perform less than sedentary work.[3] ECF No. 12 at 11. Plaintiff does not, however, explain

---

[1] *Avery v. Sec'y of Health and Hum. Serv.*, 797 F.2d 19 (1st Cir. 1986).

[2] Pursuant to 20 C.F.R. § 404.1567(b) light work is defined as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

[3] Pursuant to 20 C.F.R. § 404.1567(a) sedentary work is defined as follows:

or specify how the ALJ's sequential evaluation analysis, or her RFC determination are in any way unsupported by substantial evidence in the medical record. A review of the ALJ's decision belies Plaintiff's position, as it shows the ALJ's RFC determination of light work with the limitations she included in her decision is supported by substantial evidence.

In her decision, the ALJ discussed the findings of consultative examiners ("CE") Dr. Elizabeth Guzmán, and Dr. Marisol M. Mubarak, neurologist, at length and considered their findings in their entirety. Tr. 48-50. Specifically, the ALJ provided a breakdown of Dr. Guzmán's findings from the consultative medical evaluation Plaintiff underwent on February 7, 2023, detailing the results of Plaintiff's physical and neurological examinations with Dr. Guzmán. Tr. 48-49. These examinations showed that, for the most part, Plaintiff yielded normal results. Tr. 48-49, 1267, 1269-1278. For example, they showed Plaintiff had, among other things: normal heart function; reduced range of motion in Plaintiff's neck but full range of motion in all other areas tested; normal gait without the use of an assistive device for ambulating; extremities that had no deformities, redness, swelling, varicosities, ulcers, trophic changes, or amputations; extremities that showed no changes in temperature, tenderness or edema when palpated; active muscle tone; normal muscle bulk; 5/5 muscle strength in all areas bilaterally in lower and upper extremities; and hand function that showed no pain, tenderness, swelling, nodes, changes in pigmentation, contractures, sensory changes, amputations, deformities, atrophy, or tremors bilaterally. *Id*. (citing Tr. 1267, 1269-1278). Dr. Guzmán's findings also reflected that Plaintiff's chest x-ray yielded normal results, but noted that the spine x-rays showed conditions, such as lumbar degenerative

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

disc disease, degenerative apophyseal arthritis, cervical spasm, cervical spondylosis, and cervical uncovertebral arthritis, among others. Tr. 49 (citing Tr. 1280-1283). Dr. Guzmán noted Plaintiff had hypertension and obstructive sleep apnea, both of which were being treated, as well as morbid obesity without treatment, but no cervical condition. Tr. 49 (citing Tr. 1273). The ALJ explicitly stated she considered Dr. Guzmán's findings when making her RFC determination, but noted that Plaintiff's physical impairments were not profoundly limiting and were "consistent with the conservative treatment received." Tr. 49.

The ALJ also included a breakdown of Dr. Mubarak's findings from the consultative medical evaluation Plaintiff underwent on February 15, 2023. Tr. 49-50. According to the ALJ, the results from the physical examination conducted by Dr. Mubarak revealed Plaintiff had a "reduced range of motion at bilateral hips and lumbar spine flexion." Tr. 49. However, examination revealed that Plaintiff had a full range of motion in all the other areas tested, as well as a normal gait without use of an assistive device and presented "5/5 muscle strength in all areas tested." Tr. 49 (citing Tr. 1295-1299). Plaintiff's neurological exam also showed that he was "alert, conscious, oriented in person, time, and place" and that "[h]e presented no aphasia, apraxia, or agnosia." *Id*. (citing Tr. 1297). Dr. Mubarak also conducted coordination and sensory examinations on Plaintiff, both of which show mostly normal results. *Id*. (citing Tr. 1292-1293). As the ALJ recounts, Dr. Mubarak determined Plaintiff suffered from depression, anxiety, and obesity, and provided a guarded prognosis. Tr. 50 (citing Tr. 1294). Similar to Dr. Guzmán's findings, the ALJ determined that Plaintiff's physical impairments were not "profoundly limiting and [were] consistent with the conservative treatment received." Tr. 50.

The ALJ found both Dr. Guzmán and Dr. Mubarak's findings partially persuasive, in light of their reports, despite neither one having provided a function-by-function assessment or an

opinion as to Plaintiff's ability to perform work related activities, and specifically states that both Dr. Guzmán and Dr. Mubarak's findings were considered in assessing Plaintiff's RFC. Tr. 49-50. She also specifies that conservative treatment received consisted mostly in medication, which aligns with both Dr. Guzmán and Dr. Mubarak's reports. *Id*; *see also* Tr. 1268, 1291.

Moreover, the ALJ also included obesity in the list of severe impairments Plaintiff suffers from. Tr. 44, 48. Citing to various exhibits in the medical record, the ALJ explicitly states that Plaintiff meets the criteria for obesity in her decision. Tr. 48 (citing Tr. 1269, 1290). The ALJ even recognized that Plaintiff's obesity likely exacerbates his other impairments and considered this impact when making her RFC determination. *Id*. However, the ALJ determined that this impairment, either alone or in combination with Plaintiff's other impairments does not meet listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)), listing 1.16 (lumbar spinal stenosis resulting in compromise of the cauda equina), or listing 1.18 (abnormality of a major joint(s) in any extremity). Tr. 44.

In addition to these sources, the ALJ also discussed the findings of Dr. Rafael del Campo, treating family medicine specialist, who treated Plaintiff for his hypertension and provided medication that, per Dr. del Campo's progress notes, effectively put Plaintiff's blood pressure under control with the proper dosage. Tr. 48 (citing Tr. 282-286, 531-534). The ALJ likewise considered the results of the sleep study Plaintiff underwent at Puerto Rico Sleep Centers on August 24, 2022 and noted that the treatment Plaintiff received as a result improved his tiredness and sleep apnea. Tr. 47-48 (citing Tr. 1267). Considering the ALJ's extensive analysis vis a vis Plaintiff's physical and mental impairments, the latter of which are addressed below, the ALJ's RFC determination is supported by substantial evidence.

In his reply, Plaintiff also argues that the ALJ placed improper weight to the state agency's physiological consultants, Dr. Cindy J. Ramírez, internal medicine, and Dr. José González, internal medicine. ECF No. 17 at 3-4; Tr. 778, 782; 792, 795. He claims that, as non-examining physicians, their opinions as to Plaintiff's limitations should have been given less weight than the ALJ attributed to them. This argument also fails. Generally, "a written report submitted by a non-testifying, non-examining physician" does not, by itself, constitute substantial evidence to support the ALJ's determination. *Berríos-López v. Sec'y of Health and Hum. Serv.*, 9651 F.2d 427, 431(1st Cir. 1991). This does not mean, however, that these reports should be attributed no evidentiary weight. *See Rodríguez*, 647 F.2d at 224. Rather, "[t]he weight to which they are entitled will vary with the circumstances, including the nature of the illness and the information provided by the expert." *Id*. (citing *Guzmán Díaz v. Sec'y of HEW*, 613 F.2d 1194, 1199 n. 7 (1st Cir. 1980)). For example, "[r]eports that list all of the claimant's alleged impairments along with medical conclusions as to the extent that each impairment limits the claimant's functional capacity will be afforded greater evidentiary weight." *Vega-Valentín v. Astrue*, 725 F.Supp.2d 264, 271 (D.P.R. 2010) (citing *Berríos-López*, 951 F.2d at 431; *Quintana v. Comm'r of Soc. Sec.*, 110 Fed. Appx. 142, 144 (1st Cir. 2004)). Contrarywise, "reports submitted by non-examining physicians that merely contain short conclusory statements or the checking of boxes to indicate RFC are entitled to relatively little evidentiary weight." *Id*. (citing *Berríos-López*, 951 F.2d at 431; *Rivera-Torres v. Sec'y of Health and Hum. Serv.*, 837 F.2d 4, 6 (1st Cir. 1988)).

Here, the ALJ indeed found the state agency physiological consultants' RFC determination persuasive. Tr. 53. However, a review of these state agency consultants' examinations demonstrates that they were not merely limited to listing an RFC determination, but rather provide explanations of Plaintiff's myriad impairments, treatments, and limitations. Tr. 779-788, 784-795.

Moreover, the ALJ did not base its RFC determination exclusively on the state agency physiological consultants' reports. Tr. 53. Rather, the ALJ explained that "the consultative examinations [made by Dr. Guzmán and Dr. Mubarak], the claimant's statements, and the medical evidence on the record support[s] [her] decision to concur with the degree of postural and environmental limitations established by the state agency physiological consultants." *Id*. The ALJ's consideration of additional evidence thus further supports her decision to concur with the state agency physiological consultants' reports. *See Conte v. McMahon*, 472 F.Supp.2d 39, 49 (D. Mass. 2007) (finding that the hearing officer's citation to medical record evidence as well as plaintiff's hearing testimony constitutes substantial evidence to support the hearing officer's decision to adopt the RFC assessment performed by the state agency medical consultant). As such, substantial evidence supports the ALJ's decision to concur with the state agency physiological consultants' RFC assessment.

In sum, the ALJ's RFC assessment and determination is supported by substantial evidence. Plaintiff's desire for an alternate conclusion does not automatically render the ALJ's conclusion improper or incorrect. *See Berríos-Vélez v. Barnhart*, 402 F.Supp.2d 386, 391 (D.P.R. 2005) ("This Court must affirm the Commissioner's decision even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.") (internal quotations and citations omitted).

**B. Medical Listing 12.04**

Plaintiff also contends that his medical conditions meet the criteria for listing 12.04 (depressive, bipolar, and related disorders). ECF No. 12 at 13-16; ECF No. 17 at 4-6. Plaintiff relies heavily on the findings of his treating psychiatrist, Dr. Carlos Vargas, and goes through the

each of the four areas of mental functioning that a claimant would use in a work setting (the "paragraph B criteria"), explaining how Plaintiff meets each one. ECF No. 12 at 16; 5-6.

A treating physician's opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2). "[T]he more consistent a medical opinion is with the record as a whole," the more weight is attributed to it. 20 C.F.R. § 404.1527(c)(4). However, if said opinion is inconsistent with other substantial evidence on the record, it may be disregarded. 20 C.F.R. § 404.1527(c)(2); *see also Olmeda v. Astrue*, 16 F.Supp.3d 23, 30 (D.P.R. 2014). "The weighing of such inconsistencies is a function delegated to the administrative law judge, not to the court on judicial review." *Olmeda*, 16 F.Supp.3d at 30-31; *Rodríguez-González v. Astrue*, 854 F.Supp.2d 176, 184-85 (D.P.R. 2012). An ALJ is therefore not obliged to give such opinions controlling weight. *See id*. This notwithstanding, an ALJ "must 'always give good reasons' for the weight accorded to a treating source's opinions." *Agostini-Cisco v. Comm'r of Soc. Sec.*, 31 F.Supp.3d 342, 348 (D.P.R. 2014) (quoting *Pagán-Figueroa v. Comm'r of Soc. Sec.*, 623 F.Supp.2d 206, 210-11 (D.P.R. 2009); *cf Sánchez-Ortiz v. Comm'r of Soc. Sec.*, 995 F.Supp.2d 53, 64-65, 2014 WL 494872 at *10 (D.P.R. Feb. 7, 2014)).

In this case, the ALJ provided a detailed recounting of Dr. Vargas' findings, including the results from his medical evaluations and progress notes from the time he treated Plaintiff on June 23, 2022 through 2024, as well as Dr. Vargas' opinion that Plaintiff is "permanently and totally disabled and unable to work." Tr. 50-51 (citing Tr. 166; 169, 450; 164, 567-579). The ALJ found Dr. Vargas' opinions unpersuasive. Tr. 51. The ALJ explained that "[t]he information provided by Dr. Vargas in the Psychiatric Medical Report is not consistent with his evaluation of the claimant as examined in the treatment notes found in the medical record." *Id*. She also found that

Dr. Vargas' opinion was "radically inconsistent" with the medical examinations Plaintiff underwent while interned at CIMA Mennonite Hospital ("CIMA") and while treated at Salud Integral de la Montaña ("Salud Integral"). *Id* (citing Tr. 162-163, 141-146, 174-205, 216-250, 251-255, 287-439, 452-472, 581-772).

Specifically, the ALJ recounted that Plaintiff's first internment at CIMA was from July 5, 2022 through July 13, 2022, wherein Plaintiff was hospitalized due to "marked depression, anxiety, anguish, tension, difficulty making decisions, and tension [sic]." Tr. 51. (citing Tr. 141-146, 216-250, 251-255, 452-472). The ALJ mentioned that the mental status examinations conducted at CIMA showed Plaintiff "was well groomed with normal psychomotor activity, cooperative, and his mood was calm. His affect was congruent with his mood and his thought process was coherent, relevant, and logical. He was oriented in time, place, and person, his concentration was adequate and had no memory deficits." *Id.* Plaintiff was diagnosed with major depressive disorder and subsequently treated with medication. *Id* (citing Tr. 141-146, 216-233). The ALJ also detailed Plaintiff's second hospitalization at CIMA, from January 13, 2023 through January 20, 2023, wherein Plaintiff reported feeling "depression, anhedonia, poor concentration, frequent crying, poor concentration [sic] irritability, anxiety, insomnia, hopelessness, and sleep disturbances." Tr. 51-52 (citing Tr. 235).

Plaintiff mental examinations during this second hospitalization revealed he "was well groomed with normal psychomotor activity and was cooperative. His speech was appropriate, his mood was anxious, depressed, and sad, and his affect was congruent with his mood." *Id.* (citing Tr. 236-238). Plaintiff's "thought process was coherent, relevant, and logical, he was oriented in time, place, and person, and concentration was adequate. He had no memory deficit; insight was superficial, and judgment was partial . . . there were no hallucinations or psychotic behavior

reported and no aggressive, impulsive, explosive, or severely anorectic behavior reported." *Id*. He was again diagnosed with major depressive disorder as well as grief, and again treated with medication. *Id*.

The ALJ likewise noted the treatment Plaintiff received at Salud Integral from July 7, 2022 through December 29, 2022. Tr. 52 (citing Tr. 162-163, 192, 295-301, 338-397, 616-646, 675-681, 684-763). The ALJ described that, per a psychological summary done in October of that same year, Plaintiff "was oriented in the three spheres and denied perceptual disturbances, or suicidal or homicidal ideations. His mood was depressed, and anxious and he reported moderate problems with sleep, concentration, and mood changes," as well as "mild fatigue or low energy, social isolation, hopelessness, anxiety, and irritability." Tr. 52 (citing 162-163). He was diagnosed with major depressive disorder and an unspecified anxiety disorder. *Id*. However, as the ALJ also stated, Plaintiff's treatment notes from the same period of time (that is, July through September 2022) showed that medication and therapy improved his condition and "revealed a normal mental status examination." Tr. 52 (citing Tr. 162-163, 192, 295-301, 338-397, 616-646, 675- 681, 684-763).

The ALJ also detailed the psychological evaluation Plaintiff underwent with CE Dr. Angélica M. Rodríguez—whose findings were similar in kind and consistent with CIMA's and Salud Integral's findings—and whose opinion the ALJ found persuasive. Tr. 52-53 (citing Tr. 256-261). Furthermore, the ALJ discounted Dr. Vargas' opinion that Plaintiff was disabled, as opinions of that nature are within the exclusive purview of the Commissioner are not given "any special significance." Tr. 51; 20 C.F.R. § 404.1527(d)(1)&(3). There is no reason, nor has Plaintiff provided any, to find error in the ALJ's analysis, as it is well supported by the record evidence. Moreover, the Court is barred from reweighing evidence that has been properly considered by the ALJ. *See Ramírez-Benítez v. Bisignano*, Civil No. 25-1210 (HRV), 2026 WL 114818, at *5 (D.P.R.

Jan. 15, 2026) (citing *Colón v. Sec'y of HHS*, 877 F.2d 148, 153 (1st Cir. 1989)). As previously stated, the fact that the evidence on record may support a different conclusion does not mean the ALJ's conclusion is erroneous when, as here, it is supported by substantial evidence. *Berríos-Vélez*, 402 F.Supp.2d at 391.

**C. Plaintiff's Subjective Complaints**

Plaintiff's final challenge to the ALJ's decision is that she failed to provide a thorough analysis of the *Avery* factors and that she improperly assessed Plaintiff's subjective complaints, the latter of which should have been awarded full credibility. ECF No. 12 at 17-19; ECF No. 17 at 6-8.

In assessing a claimant's subjective symptoms, an ALJ is required to consider the *Avery* factors, which are:

> (1) The individual's daily activities; (2) The location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his back or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Vargas-López v. Comm'r of Soc. Sec.*, 510 F.Supp.2d 174, 180-81 (D.P.R. 2007) (cleaned up).

By the same token, Social Security Regulation 16-3p states that an ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities" when deciding whether a claimant has an RFC that precludes a finding of disability. 82 F.R. at 49464; *Coskery v. Berryhill*, 892 F.3d 1, 4 (1st Cir. 2018). When making such a determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's

statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. An ALJ is free to find that a claimant's subjective complaints of pain and exertional limitations are not credible. *Da Rosa*, 803 F.2d at 26 (citing *Gray v. Heckler*, 760 F.2d 369, 374 (1st Cir. 1985)). Her finding, however, "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence [s]he considered" when making this determination. *Id*. (citing *Benko v. Schweiker*, 551 F.Supp. 698, 704 (D.N.H. 1982)). Additionally, the ALJ is not required to make specific findings as to each one in her written decision; that is, the ALJ is under no obligation to discuss each one of the *Avery* factors explicitly. *See Ortiz v. Colvin*, Civil No. 13-12793, 2015 WL 4577106, at *13 (D. Mass. July 20, 2015) ("While the ALJ must consider each of the factors, there is no requirement of specific findings as to each of the factors being expressed in the written decision."); *Rivera-Collazo v. Comm'r of Soc. Sec.*, Civil No. 19-1278 (MEL), 2020 WL 13499873, at * 8 (D.P.R. Sept. 30, 2020) ("The ALJ . . . 'need not slavishly discuss all factors relevant to [the] analysis of claimant's credibility and complaints of pain in order to make a supportable credibility finding.'") (quoting *Amaral v. Comm'r of Soc. Sec.*, 7978 F.Supp.2d 154, 162 (D. Mass 2010)); *Mercado v. Comm'r of Soc. Sec.*, 767 F.Supp.2d 278, 285 (D.P.R. 2010) ("[A] failure to address all of the *Avery* factors in the rationale of the final decision is cured if the factors are discussed or considered at the administrative hearing.")

Plaintiff contends that the ALJ's analysis of the *Avery* factors was limited to a single statement the ALJ made in her opinion, to wit: "the claimant's statement concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." ECF No. 12

at 19; Tr. 47. Plaintiff relies on his hearing testimony and his Function Reports, claiming that his statements about symptoms should be deemed fully credible. ECF No. 17 at 6-8. What Plaintiff fails to mention is that the ALJ's comment regarding Plaintiff's subjective symptoms (Tr. 47) is followed by an analysis of the medical evidence on the record regarding Plaintiff's physical and mental impairments, most of which has already been analyzed in the preceding pages of this opinion. Tr. 45-54. As discussed above, the ALJ provided thorough explanations of the various medical sources that appear from Plaintiff's medical record, including the reports made by Dr. Guzmán, Dr. Mubarak, Dr. del Campo, Dr. Ramírez, Dr. González, the sleep study Plaintiff underwent at Puerto Rico Sleep Centers for his sleep apnea, and Plaintiff's hospitalizations at CIMA and Salud Integral when he suffered mental health crises. She detailed the evaluations, tests, findings, prognoses, treatments, medications, and other particulars regarding both Plaintiff's physical and mental impairments. Tr. 46-54. She attributed different weight to the medical sources on the record, as discussed above, and explained her reasoning for each one. In her decision, the ALJ also considered Plaintiff's hearing testimony and reports, where not inconsistent with the RFC, when making these determinations. Tr. 45, 47, 54. She specifically considered Plaintiff's admission in his Function Report Adult during her paragraph B criteria analysis. Tr. 45 (citing Tr. 125-132). Time and again, she found that though the objective medical evidence supported certain limitations, it did not support the level of impairment or limitations that Plaintiff alleged. Tr. 45-54. Thus, a holistic review of the ALJ's decision shows she considered the *Avery* factors when rendering her decision. Tr. 46-54. *See West v. Berryhill*, 2017 WL 6499834, at *1 (1st Cir. Dec. 11, 2017) ("[t]he court considers the ALJ's decision as a whole when determining whether substantial evidence supported the ALJ's findings.") (citation omitted). As such, Plaintiff's challenge regarding the ALJ's consideration of his subjective complaints cannot prosper.

## V. CONCLUSION

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of September, 2026.

s/Marcos E. López
U.S. Magistrate Judge